STOVALL *v.* STATE.

5009                                          346 S. W. 2d 212

Opinion delivered May 15, 1961.

*Witt & Witt* and *Shaver, Tackett & Jones,* for appellant.

*J. Frank Holt,* Attorney General, by *Dennis W. Horton* and *Jack L. Lessenberry,* Asst. Attorneys General, for appellee.

ED F. McFADDIN, Associate Justice.   Appellant, Bud Stovall, was convicted of second degree murder (§ 41-2206, Ark. Stats.) for the death of Ed Hulsey; and this appeal resulted.   The motion for new trial contains twenty-one assignments, all of which we have studied, and some of which we now discuss.

I. *The Sufficiency Of The Evidence.*   Stovall admitted that he killed Hulsey by shooting him with a .30-30 Winchester rifle.   The claim was self-defense. The parties were neighbors and long time friends. Some-

one took the condenser from Hulsey's whiskey still; and, armed with a .22 caliber rifle, Hulsey, either by accident or design, met Stovall and accused the latter's son of taking the condenser. Inflammatory language was used. Hulsey aimed the .22 rifle at Stovall, who left the encounter, went to his home, obtained a .30-30 Winchester rifle, and started looking for Hulsey. They approached each other in the road, and the fatal shooting took place while the parties were some distance apart. The evidence was in conflict as to who fired first, and also as to other matters; but the fact of the homicide and of Stovall's weapon was admitted. Malice and intent to kill may be inferred from the use of a weapon such as the one here used. *Wallin* v. *State,* 210 Ark. 616, 197 S. W. 2d 26; *Wooten* v. *State,* 220 Ark. 750, 249 S. W. 2d 964. Viewing the evidence in the light most favorable to the jury verdict — as is our rule on appeal — we find the evidence is amply sufficient to sustain the verdict.

II. *Voir Dire.* Appellant contends that the Court erred in permitting the Prosecuting Attorney to ask each juror in the *voir dire* examination whether evidence during the course of the trial, to the effect that the deceased, as well as the defendant, had been engaged in the production or sale of illegal liquor, would bias and prejudice the juror for or against the defendant or the deceased. Under § 39-226, Ark. Stats. the Court is given discretion in the scope of the examination of prospective jurors; and we hold that the question complained of in the *voir dire* examination was relevant, inasmuch as appellant and deceased had, in fact, been engaged in the making of whiskey, and such testimony was later adduced without objection.

III. *"Opinion" Evidence.* Appellant contends that the Court erred in allowing the Sheriff to testify as to how much of the Sims road he could see from a picture and diagram of the place where the shooting occurred. It is claimed that this was a conclusion which should have been reserved to the jury. We hold that this is a conclusion reached through the sense of sight and is not objectionable as a matter of opinion. In *McElroy* v.

*State,* 100 Ark. 301, 140 S. W. 8, where a witness testified that she recognized the voice of the person who called her husband out in the night and shot him, we held that it was a statement of a conclusion reached through the sense of hearing, and was not objectionable as a mere matter of opinion; and that it was for the jury to determine the weight to be given such testimony. Also, it was held in *Robinson* v. *State,* 177 Ark. 534, 7 S. W. 2d 5, that testimony that deceased had been dragged sixteen feet from pool of blood was a statement of physical fact and was not error. See also *Bobo* v. *State,* 179 Ark. 207, 14 S. W. 2d 1115; 32 C. J. S. "Evidence" § 497; 20 Am. Jur. "Evidence" § 803; 26 Am. Jur. "Homicide" §§ 434, 435. This testimony, to which appellant here objects, was presented before the jury visited the scene of the shooting and we believe was helpful in presenting a clearer picture to the jury. However, since the jurors did, in fact, visit the scene, and were therefore able to make a personal observation, there was eliminated any chance that appellant could have been prejudiced by the testimony of the Sheriff.

IV. *Conversations Between Witnesses, and Deceased.* The State's witness, Vernie Summit, testified that Hulsey was in a good humor as he returned from work to his home on the day of the killing, and that Hulsey showed no signs of anger. Then the following occurred:

"CROSS EXAMINATION BY MR. TACKETT

Q. You don't know whether he had been to his whiskey still before he got home or not and found that somebody had gotten something off of it or not, do you?

A. I am almost sure he hadn't before he got home.

Q. You don't know what mood he was in when he found out the condenser was gone do you?

A. He knew that before that date.

REDIRECT EXAMINATION BY MR. RIDGEWAY

Q. Was that the subject of the conversation you had with him?

MR. TACKETT: I object to any conversation he had— (Interruption.)

MR. RIDGEWAY: Your Honor, he brought it out.

MR. TACKETT: I didn't bring out any conversation.

THE COURT: You brought out about his still Mr. Tackett.

MR. TACKETT: I sure did.

MR. RIDGEWAY: He objected to me saying anything about that.

THE COURT: You opened the door, Mr. Tackett, and Mr. Ridgeway asked him if he had a conversation about a still; I think you opened the door.

MR. TACKETT: I asked nothing about a conversation about a still. I asked him if he had known whether or not he had gone to his still before he got home.

Q. Was that the subject of the conversation on the way to work? . . .

A. He said he lost his condenser. . . .

CROSS EXAMINATION BY MR. TACKETT

Q. He was just tickled to death that he lost his condenser, wasn't he?

A. He was laughing, he was always laughing.

Q. That's all."

The appellant complains that in the above testimony the witness Vernie Summit was allowed to detail a conversation between the witness and the deceased, which conversation occurred in the absence of the appellant. But when the full record is considered, it is clear that no error occurred prejudicial to the appellant. The State had shown that Hulsey was in a good humor as he returned home from work. On cross examination, the

appellant's counsel tried to establish that Hulsey was in a good humor *before* he knew that someone had taken the condenser from his still. The obvious purpose for the examination by appellant's skilled counsel was to show that when Hulsey learned that someone had taken the condenser from his still he became angry and armed himself and started on a dangerous enterprise. This is shown by the questions that were asked on cross examination. But the witness Summit said that Hulsey knew the condenser was gone before that date. Quite naturally, then, on redirect examination, the State asked the witness if Hulsey had so informed him. When appellant's attorney objected, the Court correctly said, "You brought out about about his still, . . . " Every time the witness tried to relate anything, except about the loss of the condenser, the Court properly sustained the objection. The obvious purpose of the State on redirect examination was to show that the deceased Hulsey was in a good humor, even though he knew someone had taken the condenser to his still. The appellant injected this matter into the case by the questions on cross examination and therefore cannot complain of what was developed. *Coffee* v. *Ark. P. & L. Co.,* 195 Ark. 559, 113 S. W. 2d 1100; *Stuckey* v. *O'Neal,* 86 Ark. 145, 109 S. W. 1164; and *Eaves* v. *Lamb,* 209 Ark. 987, 193 S. W. 2d 328.

The appellant also urges that the Court committed error in allowing Mrs. Hulsey (widow of the deceased) to testify as to a conversation she had with her husband after he reached home from work and before he left with his gun. The only purpose of such testimony was to show that Hulsey was in a good humor; and such testimony was merely cumulative to that of Vernie Summit, previously detailed. We find no prejudicial error committed, even if we concede that exceptions were properly made.

V. *Other Claimed Errors.* Several other assignments in the motion for new trial related to rulings in admitting or excluding evidence; and also there were several assignments regarding the giving, modifying, or refusing of instructions. It would unduly prolong

this opinion to list each assignment and detail the reasons for our decision. It is sufficient to say that we have discussed the only assignments that gave us any serious concern. We have studied all of the others and find them to be without merit.

Affirmed.