August SYNOGROUND v. STATE of Arkansas

CR 76-162                                    543 S.W. 2d 935

Opinion delivered December 13, 1976
(Division I)

*Floyd G. Rogers*, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was convicted of attempted burglary on jury trial. His several points for reversal are combined under two arguments: that circumstances surrounding appellant's pretrial identification by a witness for the state were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification and that evidence of other crimes was improperly admitted.

The pretrial identification was made by James Uselton. Evidence submitted at a pretrial hearing on appellant's motion to suppress the identification revealed:

On August 19, 1975, in Barling, Arkansas, at approximately 9:30 p.m., as James Uselton was walking home from his mother's house he heard a noise that he described as glass breaking. He then saw a person run from behind the Medi-Sav Drug Store. He called a local police officer, Dale Lairamore, who investigated the area and later discovered that an air conditioning vent had been pried loose from the drug store. Lairamore testified that it was dark when the incident happened. Uselton described the suspect as a male wearing black or dark clothing, with medium-length, or collar-length hair. Lairamore had seen Synoground seated on a bench about a hundred yards from the drug store after the incident was reported, and had a good look at him and ascertained his identity.

After the appellant was arrested, charged, and had retained counsel, Lairamore went to the home of Uselton and showed him pictures of five subjects. Uselton was standing beside Lairamore's police car when he examined these photographs. Four of them showed both front and profile views of male faces. The other showed only a front view of a male face. The picture of the accused was in color and bore the numbers 8 22 75. The others were black and white and bore the numbers 11 27 73, 8 29 73, 2 15 74 and 4 14 73. Lairamore testified that Uselton looked through the pictures several times and said, "Well, it's kinda hard to tell" because all he saw that night was the side of the person. Lairamore

stated that he then told Uselton to look at the part that shows the side view and to imagine "the person as he was dressed that night;" that Uselton then covered part of the picture with his hand and went through them a couple of times. He stated that Uselton told him that one of the photographs was "kind of close" but another looked more like the man he saw, and the hair was about the same. The latter was the photo of the appellant. It took about five or six minutes for Uselton to pick out the appellant's picture. Lairamore testified that the pictures were not arranged in any particular order and that he did not say or do anything that would indicate which picture represented the suspect.

Uselton testified at the hearing that when the incident happened that it was "about dark," and the street lights were on and he only got a glimpse of the subject, seeing only a part of one side of his face. He further testified that when he looked at the photographs that Lairamore told him to remember about the black pants and shirt. He covered the profile views in the photographs so that little beside the hair was showing. He stated that he looked through the pictures, and that they did not help him much in looking at the face, but he identified the "guy with blond hair with a white shirt," that there were no other pictures that looked like the subject he saw that night. The prosecuting attorney asked, "Do you know this gentleman sitting here at the defense table, the one in the middle?" Uselton answered, "No, sir, I sure don't." The prosecuting attorney then asked, "You don't ever recall seeing him before?" "No, sir, I don't." "Do you recall a Preliminary Hearing which you testified in before?" "He was blond, blond hair." Uselton insisted that the person he saw that night had blond hair and said that he made his identification of the picture by the light blond hair, but admitted that the person at the defense table, who was identified for the record as the appellant, did not have blond hair. The witness identified correctly the photograph he had previously picked out and stated that it looked like the appellant and that the person in the picture did not have blond hair, but again stated that he saw a blond-haired subject that night. Uselton recalled having identified someone at a preliminary hearing, but said that this person had blond hair.

Uselton stated that he identified the picture as being of

the man he saw on August 19 only by placing his hand over a portion of the profile view so that he could see only the portion of the head from the eyes on back, and that the identification was made primarily by looking at the hair and the side of the face. He said that he did not see any other pictures that resembled the man he saw on August 19.

On redirect examination Uselton suddenly remembered that as he waited for Lairamore to investigate, that the man in black clothes had "came back around . . . and that's when I, when I seen his whole face then . . . He dropped something. He bent over and I still noticed the blond hair, he had light blond hair." In spite of this, he said he had difficulty in identifying any photograph until he covered the profile view in the manner he had described. He did not identify a frontal view.

Uselton testified that he had only gone through the eighth grade and could not remember when he moved from Barling to Ft. Smith. The motion to suppress was denied. When testifying at the trial, which was three days later, Uselton insisted that the man he saw running out of the alley had hair that was blondish brown, brown, and dark. The motion was again made and denied at the trial on the merits, after Uselton had testified.

The unreliability of eyewitness identifications has often been noted. See Note 6, *U.S.* v. *Wade,* 388 U.S. 218, 228, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) where the following authorities are cited: Borchard, *Convicting the Innocent;* Frank & Frank, *Not Guilty;* Wall, *Eye-Witness Identification in Criminal Cases (1965);* 3 Wigmore, *Evidence* § 786a 3d Ed. (1940); Rolph, *Personal Identity;* Cross, *Criminal Investigation* 47-54 (Jackson Ed. 1962); Williams, *Proof of Guilt* 83-98 (1955); Wills, *Circumstantial Evidence* 192-205 (7th Ed. 1937); Wigmore, *The Science of Judicial Proof* §§ 250-253 (3d Ed. 1937). This factor was of prime importance in the Supreme Court decision that an accused has a constitutional right to the assistance of counsel at a lineup identification. *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The Supreme Court declined to extend the right to counsel to photographic showups, *U.S.* v. *Ash,* 413 U.S. 300, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973) but did recognize that pretrial identification procedures could be so suggestive as to

create a substantial possibility of irreparable misidentification. *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Simmons v. U.S.*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

Normally the reliability of eyewitness identification of a defendant is a question for the jury. But, when the procedures leading to the identification are so defective as to undermine its reliability, the identification is inadmissible as a matter of law. "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, supra; *Foster v. California*, 394 U.S. 440, 22 L. Ed. 2d 402, 89 S. Ct. 1127 (1968). In addition, we have held that identity cannot ordinarily be established by evidence of an extrajudicial identification as original evidence. *Trimble v. State*, 227 Ark. 867, 302 S.W. 2d 83. To determine whether such an error had occurred we view the totality of the circumstances. *Simmons v. U.S.*, supra; *Foster v. California*, supra; *Stovall v. Denno*, supra.

Other than the dissimilarities between the photographs already noted there was no direct evidence that the witness was influenced by any suspicious pretrial procedures. However, the witness's confusion as to the color of the hair of the accused at the time the crime was allegedly committed, his statements that he didn't know the defendant (in the room where the in camera hearing was held) and had never seen him before, together with his complete failure at the hearing to state that it was the defendant who ran out from between the buildings, casts a thick cloud of doubt over the identification and the procedure relating to the identification of appellant as the would-be robber. At the hearing, it was demonstrated that all the witness identified was the hair, which, considering variation in color, might have been a wig. The conclusion that Uselton's courtroom identification was suggested only by viewing a color photograph bearing a current date and by the developments at the suppression hearing seems inescapable, when considered along with the grave uncertainty about Uselton's ability to otherwise identify appellant. An identification as patently unreliable as this

one should have been suppressed because of the substantial possibility of irreparable misidentification. *King* v. *State,* 253 Ark. 614, 487 S.W. 2d 596; *West* v. *State,* 255 Ark. 668, 501 S.W. 2d 771.

Appellant's second argument will likely arise on retrial therefore must be considered. At the trial Jeanne Teague testified that she had dated the appellant and had lived with him for a while. The prosecuting attorney asked her why she terminated the relationship. She answered, "He was shooting drugs and I —." The defense thereupon moved for a mistrial. The motion was denied. When the prosecutor continued that line of questioning the witness stated that appellant was taking amphetamines. Defense objections were overruled.

Evidence of other crimes is properly excluded because Anglo-American notions of fair play require that a defendant be convicted for the offense charged, not because he had done other illegal acts. But evidence of other crimes is not always excluded.

> "If other conduct on the part of the accused is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible, with a proper cautionary instruction by the court." *Alford* v. *State,* 223 Ark. 330, 266 S.W. 2d 804.

The defendant was convicted of attempted burglary. This crime is defined in Ark. Stat. Ann. § 41-1007 as "[t]he unlawful attempt to break or enter a house, tenement, railroad car, automobile, airplane or any other building . . . by day or night, with the intent to commit any felony or larceny . . . " The intent to commit any felony or larceny is an element of this crime. It is incumbent on the state to present evidence of this intent, although a larcenous intent may be inferred under certain circumstances, *Scates* v. *State,* 244 Ark. 333, 424 S.W. 2d 876. See, *Graham* v. *State,* 224 Ark. 25, 271 S.W. 2d 614; *Pope* v. *State,* 216 Ark. 314, 225 S.W. 2d 8.

The *Alford* case is the only authority cited by the defendant to support his position. That case was reversed, not because the evidence of the other crime was not relevant, but

because the evidence was not needed by the state as the facts in that case were developed. The court explained:

> "Thus our cases very plainly support the common-sense conclusion that proof of other offenses is competent when it actually sheds light on the defendant's intent; otherwise it must be excluded. In the case at bar it seems to us idle to contend that there was any real question about Alford's intent, concerning which the jury needed further enlightenment."

Jeanne Teague's testimony that appellant had a taste for controlled drugs, obtainable at a drug store, is relevant to the issue of the accused's intent to commit larceny. *Pope* v. *State,* supra.

Furthermore, the state also had a right to prove that the accused had a motive for committing the crime, whether this proof of motive discloses the commission of other crimes or not, at least if the evidence is so closely connected with the main issue that it tends to prove the crime charged. *Pope* v. *State,* supra. See also, *People* v. *Durso,* 40 Ill. 2d 242, 239 N.E. 2d 842, (1968); *Grubb* v. *State,* 551 P. 2d 289 (Okla. Cr., 1976). In the Illinois case evidence of other crimes involving possession, sale and use of narcotics was admitted to prove the motive for murder — that the murder was punishment for shorting on drug profits. In the Oklahoma case evidence that the accused had escaped from the penitentiary was admitted to prove motive for concealing stolen property, a birth certificate and Social Security card — to be used for the purpose of concealing his own identity.

The judgment of this court is that the case be remanded for a new trial at which the identification of the defendant by James Uselton be excluded from evidence.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and JONES, JJ.