William J. FOUNTAIN, Jr. *v.* STATE of Arkansas

CR 80-114                              620 S.W. 2d 936

Supreme Court of Arkansas
Opinion delivered September 14, 1981

458

*E. Alvin Schay,* State Appellate Defender, for appellant, and appellant *pro se.*

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

Richard B. Adkisson, Chief Justice. After a trial by jury, appellant William J. Fountain, Jr., was convicted and sentenced to 50 years and fined $15,000 for rape, to 25 years and fined $10,000 for kidnapping, and to five years and fined $5,000 for burglary. On appeal appellant contends the evidence was insufficient to support his conviction for rape. In testing the sufficiency of the evidence on appeal this Court views the evidence in the light most favorable to the State and will affirm if there is substantial evidence to support the conviction. *Norton* v. *State,* 271 Ark. 451, 609 S.W. 2d 1 (1980); *Lunon* v. *State*, 264 Ark. 188, 569 S.W. 2d 663 (1978). Evidence is substantial if it is of sufficient force and character to compel a conclusion of reasonable and material certainty. *Jones* v. *State,* 269 Ark. 119, 598 S.W. 2d 748 (1980).

The victim testified at trial that the appellant appeared at her home at approximately 1:30 p.m. on October 4, 1979, in a gold Vega, and inquired about a four-wheel drive truck which had been advertised for sale in a local paper. The victim and the appellant conversed in the carport for about 40 minutes; then at the appellant's request, the victim went inside to call her husband concerning the sale of the truck. Appellant, uninvited, followed her inside, and before she could place the call she was attacked, bound with black electrical tape, and raped. She suffered a broken neck, severe lacerations to the head, and was rendered unconscious. Upon regaining consciousness, she called her husband who arrived a little after 3:00 p.m. She immediately began describing her assailant to him, and he called the police. She again described her assailant to the police while waiting for an ambulance. She was then taken to the hospital and treated for her injuries.

At the hospital, she was treated by Dr. Rustin Pierce, whose function is to examine rape patients. He testified that he took specimens from the victim and found the presence of prostatic acid phosphatase, an enzyme produced only by males. He then testified that the presence of the prostatic acid phosphatase indicated that she had had recent intercourse. In light of the victim's testimony concerning the rape, which was corroborated by Dr. Pierce, it is clear that there is substantial evidence upon which to uphold the appellant's conviction for rape.

In addition to the issue of substantial evidence, appellant's court appointed counsel has raised three points for reversal and appellant has raised 11 additional points in a separate pro se brief. These points will be consolidated under eight points for review.

I

Appellant argues for reversal that the testimony of two witnesses, Kay Clifton and Rhonda Moss, should not have been admitted. Appellant bases his objection on remoteness in time and lack of personal knowledge. This Court finds no merit to this argument. The testimony of both witnesses was

probative on the issue of identification of the assailant. Rhonda Moss, a real estate agent, testified that on September 10, 1979 (a date less than a month before the rape occurred), she showed appellant a house in the same neighborhood in which the victim lived. On this date the appellant was driving a gold Vega. Kay Clifton, also a real estate agent, testified that she also showed houses to the appellant on September 11 and 12, 1979, and that appellant was driving a goldish Vega. Furthermore, she testified that the appellant told her he wanted to buy a four-wheel drive vehicle. The testimony of these two witnesses serves to connect the appellant with the crime and thereby establish his identity as perpetrator. As such, it was clearly admissible.

## II

Appellant next urges for reversal that the trail court erred in allowing the introduction into evidence as State's Exhibit No. 2 a roll of black electrical tape seized by the police at appellant's residence. The sole objection at trial was that it was not related to the tape which had already been introduced as State's Exhibit No. 1 which was the tape used to bind her arms. This objection is without merit. The roll of tape was clearly admissible because of the similarity between it and the tape used to bind the victim, thereby making the appellant's identity as the rapist more probable than it would have been without the evidence. Furthermore, another witness, Kay Clifton, testified that the appellant removed a roll of black electrical tape from a can inside his pocket while she was showing him houses.

At trial the prosecution did not attempt to prove this tape seized at appellant's residence was the same tape as used to bind the victim; rather, it was presented as circumstantial evidence for the jury to consider along with all the other evidence. The roll of tape seized pursuant to the search warrant was just another link in the State's evidence connecting the appellant to the crime. The jury apparently weighed the evidence, including appellant's statement that he had bought the tape to repair wiring in a car, and determined the appellant was guilty. Resolving this type of

evidence is within the-jury's province. *Plummer* v. *State,* 270 Ark. 11, 603 S.W. 2d 402 (1980).

Appellant raised an additional objection to the admission of this tape arguing that the prosecution violated a court order by not sending the tape to the crime lab to be tested. However, at trial, police witnesses testified that the tape was sent to the crime lab for testing; but testing was not completed due to the illness of the person who was performing the tests.

### III

Appellant alleges the court erred in allowing the testimony of Dr. Richard Jordan, a neurosurgeon, regarding the extent of the injury to the victim's neck. Appellant first claims surprise due to the failure of the prosecution to disclose the name of this witness. Appellant had filed a pre-trial motion requesting the names of all witnesses. The prosecution responded by stating he had opened his file to appellant. Appellant also now argues that the prosecution allegedly "stipulated" at a pre-trial hearing that the only evidence pertaining to the neck injury at trial would be the victim's own testimony. Additionally, appellant alleges that the neck injury is an injury separate and apart from the rape. However, at trial, the sole objection to the doctor's testimony was that it was immaterial. Therefore, only the materiality of the doctor's testimony will be considered upon appeal.

The Court finds Dr. Jordan's testimony clearly material since the injury to the victim's neck occurred at the time of and in the course of a brutal sexual assault and was proof on the issue of forcible compulsion, an essential element in the proof of rape. Injuries suffered by the victim have long been admissible in rape trials. *Maxwell* v. *State*, 236 Ark. 694, 370 S.W. 2d 113 (1963);*Alford* v. *State,* 223 Ark. 330, 266 S.W. 2d 804 (1954).

### IV

Appellant alleges that the trial court erred in admitting the hearsay testimony of the victim's husband who

had arrived home to find his wife half naked, obviously in extreme pain, trembling, bleeding profusely from a head wound, and almost hysterically attempting to explain what had happened to her.

This point is clearly without merit. The statements were made while the victim was under stress and excitement caused by the brutal crime and are clearly admissible under our case law. *Burris* v. *State,* 265 Ark. 604, 580 S.W. 2d 204 (1979); Rule 803(2), Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979).

## V

Appellant asserts that the court erred in refusing to suppress the in-court identification of the defendant by the victim and a witness, A. A. Davis, on the ground that such identification was rendered unreliable by two separate photo identification lineups conducted by the Conway Police Department.

The first photo lineup consisted of 11 photographs, two of which were of the defendant, some were in color, some were in black and white. The appellant claims it was rendered unreliable by the inclusion of two separate photographs of the defendant.

The second photo lineup consisted of 13 photographs some of which were black and white, and some of which were in color. Appellant claims this lineup was unreliable due to the fact that beneath appellant's photo was printed a date later than the date of the crime.

Appellant asserts a claim of right to counsel at the photographic identification lineup. However, an accused does not have a right to counsel at a photo lineup. *United States* v. *Ash,* 413 U.S. 300 (1973); *Synaground* v. *State,* 260 Ark. 756, 543 S.W. 2d 935 (1976).

Appellant further claims the photo lineups were unconstitutionally suggestive. When a photographic identification is followed by an eyewitness identification at trial,

the conviction will be set aside only if the photographic show up was so suggestive as to create a substantial possibility of irreparable mis-identification. *West* v. *State* 255 Ark. 668, 501 S.W. 2d 771 (1973); *Synaground* v. *State, supra.*

Factors to be considered in testing the raliability of lineup identification are set out in *Manson* v. *Brathwaite,* 432 U.S. 98 (1977) and *McCraw* v. *State,* 262 Ark. 707, 561 S.W. 2d 71 (1978): (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Neil* v. *Biggers,* 409 U.S. 188 (1972).

Whether or not the particular procedure used is so unnecessarily suggestive as to violate due process must be determined from the totality of the circumstances. *Stovall* v. *Denno,* 388 U.S. 293 (1967); *Giles* v. *State,* 261 Ark. 413, 549 S.W. 2d 479 (1977). Based upon the totality of the circumstances in this case, there is little, if any, possibility of mis-identification by the victim. The victim had sufficient opportunity to view the appellant during a conversation of some 30-40 minutes in broad daylight, as well as during the subsequent criminal attack. At trial, the victim testified that her assailant's wavy black hair and piercing blue eyes stuck out in her mind, and that she could never forget them. There is also substantial evidence pointing towards the reliability of Mr. Davis's identification of the appellant. On the date in question, Mr. Davis observed a man talking to the victim on her carport. His attention was drawn to the man because he resembled another person known by the witness. He observed the victim and the man for more than four minutes at a distance of about 70 feet. Furthermore, both Mr. Davis and the victim, without any suggestion from the police officers, picked the appellant's picture out of photo lineups and were very definite in their in-court identification of appellant.

## VI

Appellant next argues that he was prejudiced by the pre-trial publicity resulting from the trial court's failure to hold an in camera suppression hearing regarding the witness's identification of him. Adequate safeguards from pre-trial publicity are provided by the *voir dire* examination of prospective jurors. Since appellant has not abstracted the *voir dire* of the jury, he is unable to demonstrate any prejudice that may have resulted. Furthermore, appellant's reliance on *Gannett Co.* v. *DePasquale,* 443 U.S. 368 (1970) for the proposition that appellant's pre-trial hearing should have been closed, is misplaced. The issue in that case was whether members of the public have an independent constitutional right to insist upon access to a pre-trial judicial proceeding. In holding that there was no such right, the court clearly stated, "While the Sixth Amendment guarantees to a defendant in a criminal case the right to a public trial, it does not guarantee the right to compel a private trial." *Gannett Co.* v. *DePasquale, surpra.*

## VII

The abstract of the record does not reflect, as appellant argues, that he was improperly limited to eight peremptory challenges and that the court curtailed the defendant's *voir dire* examination of juror Thornton. Since appellant has failed to abstract the *voir dire* examination of the jurors, there is simply no showing that appellant was forced to take a juror he was not satisfied with. *Kirk* v. *State,* 270 Ark. 983, 606 S.W. 2d 755 (1980); *Conley* v. *State*, 270 Ark. 886, 607 S.W. 2d 328 (1980).

## VIII

Appellant alleges that the court erred in allowing the prosecutor to question him concerning how he got to Arkansas after escaping from a North Carolina prison. Appellant argues the questions were improper because he had been charged with car theft in North Carolina, and did not want this evidence before the jury.

A review of the transcript discloses that although the prosecutor did ask several questions concerning appellant's mode of transportation to Arkansas, the appellant did not answer and his objections to the questions were sustained. Therefore, evidence of the pending charge was never before the jury, and appellant suffered no prejudice.

Affirmed.