Kevin Andre ROBINSON *v.* STATE of Arkansas

CR. 81-106                                    631 S.W. 2d 294

Supreme Court of Arkansas
Opinion delivered April 12, 1982

*William R. Simpson, Jr.,* Public Defender, and *James Phillips* and *Kelly Carithers,* Deputy Public Defenders, by: *Deborah R. Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Matthew Wood Fleming,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Kevin Andre Robinson was convicted and sentenced to consecutive terms of fifty years for rape and twenty years for attempted rape. He argues that his due process rights were violated by the in-court identification which he claims was tainted by unnecessarily suggestive pretrial procedures. The evidence established that five young girls were walking to Oakhurst School in Little Rock on December 5, 1980, when the appellant approached them and asked if they would go into the woods and help him put some puppies in a bag. The three older girls declined and walked on. Appellant approached the other two girls and told them he would pay them five dollars for their help. They agreed to help and walked into the woods, where appellant grabbed them and raped one and attempted to rape the other. The crime was reported and an investigation ensued. A photographic spread was made up consisting of six photographs and it was shown to the two victims and to the other three girls. The appellant was identified as the rapist. A physical lineup was then conducted which included appellant and five other men. Again, appellant was identified as the rapist. Contending that the identification was inherently unreliable, the appellant filed a motion to suppress any in-court identification of him which the trial court denied. We affirm.

Specifically the appellant contends that the lineup identification was suspect because he was the only person included in both the photo spread and the lineup, because he had on the same shirt in both and because he appeared to be several inches taller than the other men in the lineup. Appellant cites a United States Supreme Court opinion where a lineup resulted in a violation of the petitioner's constitutional rights and argues that decision should control here. *Foster* v. *California,* 394 U.S. 440 (1969). But in

*Foster* there were only three men included in the lineup and the accused was six feet tall while the other two men were only five and one-half feet tall. Also, a jacket similar to the one described by the victim was worn by the accused and the victim could not positively identify the robber. The victim asked to speak with the accused and after a confrontation he was still not certain as to whether the petitioner was the robber. One week later another lineup was conducted and the accused was the only person who had appeared in the first lineup. The victim finally identified the accused and the court noted that:

> The suggestive elements in this identification procedure made it all but inevitable that the victim would identify petitioner whether or not he was in fact "the man." This procedure so undermined the reliability of the eyewitness identification as to violate due process.

In *Fountain v. State,* 273 Ark. 457, 620 S.W. 2d 936 (1981), we announced the factors used to determine the reliability of an identification. They are (1) the opportunity of the witness to view the criminal at the time of the crime (2) the witness' degree of attention (3) the accuracy of the witness' prior description of the criminal (4) the level of certainty demonstrated by the witness at the confrontation and (5) the length of time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. Here all the witnesses had ample opportunity to view the appellant and they were with him for an extended period. Their degree of attention was such that they gave similar descriptions. These descriptions were used to conduct the lineups from which appellant was identified. At the trial the witnesses were definite in their in-court identification. The appellant was identified at all three stages in the proceedings — at the photographic lineup six days after the crime, at the lineup eleven days later and at the trial approximately six and one-half months later. The procedure used and the resulting identification were reliable under the factors enumerated.

All of the witnesses were certain in their in-court

identification of appellant. In *Fountain* v. *State,* supra, we stated, "When a photographic identification is followed by an eyewitness identification at trial, the conviction will be set aside only if the photographic show-up was so suggestive as to create a substantial possibility of irreparable misidentification." The identification in this case was based upon the observation by the witnesses and was not induced by investigation procedures.

The appellant also made a motion for a mistrial when the prosecutor commented on the reliability of the photographic lineup during his closing argument. In appellant's closing argument it was noted that there was no "neutral representative" in the room where each witness observed the physical lineup, therefore there was no way of knowing if the witnesses were coerced. The prosecutor responded in his closing argument that a neutral authority, the trial judge, had reviewed the procedure in a pretrial hearing and found that the procedure was not defective. The trial court admonished the jury but refused to grant a mistrial and we affirm. It is permissible to comment upon matters which were discussed or invited by the appellant's preceding closing argument. *Ruiz and Van Denton* v. *State,* 265 Ark. 875, 582 S.W. 2d 915 (1979). A mistrial is a drastic remedy and will not be resorted to unless the prejudice is so great that it cannot be removed by an admonition to the jury. *Cobb* v. *State,* 265 Ark. 527, 579 S.W. 2d 612 (1979). Here the trial judge admonished the jury to disregard the comment. Since a mistrial is within the sound discretion of the trial judge and the decision will not be reversed unless there is a clear showing of abuse, we cannot say that the trial judge abused his discretion. *Cary* v. *State,* 259 Ark. 510, 534 S.W. 2d 230 (1976).

Charges against the appellant had been filed in two other incidences of similar rapes but in a pretrial hearing the trial court ruled that no mention of those other rapes could be made. On cross-examination, a police officer was asked by appellant's attorney if he told the appellant why he was being asked to go to the police station. The officer answered "yes" and was then asked what he told appellant. He answered that he told him, "I was investigating a series of

rapes." Appellant's motion for a mistrial was denied on the basis that counsel's question elicited the response. The trial judge was correct in his ruling. In *Stovall* v. *State*, 233 Ark. 597, 346 S.W. 2d 212 (1961), we said that when the appellant injects the matter into the case by questions on cross-examination, he cannot complain of what develops. Since appellant asked the specific question, the officer could truthfully answer it. The granting of a threshold motion to prevent certain testimony does not require a witness to conceal the truth in order to respond to a question by the moving party.

Affirmed.

ADKISSON, C.J., and PURTLE and HAYS, JJ., dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. The majority have incorrectly held that, during closing argument, the defense invited certain comments by the prosecuting attorney. Not only were the prosecutor's comments uninvited but were so damaging that their prejudicial effect was not removed by the admonition of the trial judge.

During closing argument the appellant's attorney made an argument to the jury concerning the lineup conducted by the police:

> But Kevin [appellant] had signed a waiver saying that he didn't want to be represented by counsel. So, even though there has been, as Mr. Adams said, no hint that there was some sort of collusion or some sort of directing of their attention towards someone, we don't know. I mean, there is no neutral representative in that dark room, to stand there as an impartial witness and say, 'That didn't happen.' All we have is a police officer who said, 'No, I didn't try to guide which way they were supposed to look or which person they were supposed to look at.' And I'm not accusing a police officer of lying. All I'm saying is that we don't have a neutral representative to know.

By using this statement as having "opened the door,"

the prosecuting attorney argued to the jury:

> The defendant sought to say that there had been no neutral authority who has reviewed the actions of the police department, reviewed the line-ups, but there has been. And that's the authority of the Judge. Ladies and gentlemen, if there had been something wrong — if there had been a defect in the photo show-ups or the line-ups, they wouldn't be here before you. We had a pre-trial hearing on that. They're here before you because the Judge found no defects.

It is conceivable that a prosecutor, during the urgency of the trial, could confuse the defense attorney's statement that there was not a neutral person present at the lineup with the trial judge's neutrality in later finding that the identification of the defendant by the witnesses was reliable. However, it is inconceivable that this court could be confused by this language and hold that the defense comment invited the prosecutor's remarks. As the record clearly reflects, the defense counsel's statement in no way referred to the pretrial determination by the trial judge.

Appellant promptly objected to the prosecutor's argument and asked for a mistrial, which was denied. The trial judge then attempted to glaze over the error by an unsatisfactory admonition to the jury:

> The Court will indicate to the jury that you are to consider only the evidence and the facts that have been elicited here today. Whatever happened before, that did not come up in this trial before you through the live witnesses or through the opening remarks of the attorneys, is not to be considered. I ask you to disregard any statements or comments about anything that happened outside of this courtroom today, that did not come in through live testimony or stipulations.

This admonition by the trial court, unquestionably, did not remove the effect of the prosecutor's very damaging and prejudicial remarks. Actually, it is difficult to imagine what the trial court could have said to cure this error. The

prosecutor's statement to the jury was intentional and couched in clear and unmistakable language.

The trial judge must determine as a matter of law whether there are constitutional infirmities rendering identification evidence inadmissible. If admissible, reliability of identification is an issue of fact to be decided by the jury. *See Synoground v. State,* 260 Ark. 756, 543 S.W. 2d 935 (1976). Here, the defendant was entitled to have the issue of the reliability of the identification determined by the jury, unbiased and unaffected by the opinion of the trial judge. *See Sharp v. State,* 51 Ark. 147, 10 S.W. 228 (1888). A mistrial should have been declared. I would reverse and remand for a new trial.

I am hereby authorized to state that PURTLE and HAYS, JJ., join in this dissent.