George W. THOMPSON *v.* STATE of Arkansas

CR 89-28                                              769 S.W.2d 6

Supreme Court of Arkansas
Opinion delivered May 1, 1989
[Rehearing denied June 5, 1989.*]

*Purtle, J., would grant rehearing.

*John Wesley Hall, Jr.* and *Craig Lambert*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, George W. Thompson, appeals his conviction of keeping a gambling house in violation of Ark. Code Ann. § 5-66-103 (1987). He states four points: (1) the court erred in failing to require the state to produce a confidential informant and then permitting a police officer to testify with respect to statements made by the informant, (2) the court erred in admitting hearsay evidence, (3) the evidence was insufficient to support the verdict, and (4) the statute is unconstitutional because it is vague. We hold: (1) it was not error to permit testimony about statements made by the informant because the defense opened the subject through cross-examination; (2) the statements complained of were not hearsay; and (3) the evidence was sufficient to support the conviction. We need not reach the constitutional issue because it was not raised at the trial, *Barnes* v. *State*, 294 Ark. 359, 742 S.W.2d 925 (1988). We, therefore, affirm the conviction.

At an omnibus hearing, the court ruled that the state need not reveal the name of its informant absent a plan to present, at trial, testimony as to statements made by the informant. The state did not reveal the name of the informant. At the trial, Officer Wallis testified he conducted a search of a building located at 1234½ W. 10th St. in North Little Rock as the result of a tip received from an informant. On cross-examination defense counsel questioned the officer specifically about what was said during conversations between the informant and a person who answered as "George" during calls to 371-9781 being monitored by Wallis prior to the search. Wallis described the calls and stated "we came to recognize his voice."

During the search two telephones on the premises rang constantly, each about every 60 seconds. On one occasion an

officer answered the phone and actually accepted what was apparently a horse race bet, known as a "round robin," from someone named Waller. A number of documents which appeared to be, and which were described by Wallis as, "betting slips" were seized, along with a list apparently showing customer names and the amounts they owed or which were owed to them. Thompson was arrested at the scene. A telephone company official testified the number (501) 371-9781 was listed for a George A. Thompson.

### 1. Identity of the informant

■ Whether the name of a confidential informant is to be disclosed depends on the circumstances of the case. *Roviaro* v. *United States*, 353 U.S. 53 (1957); *McDaniel* v. *State*, 294 Ark. 416, 743 S.W.2d 795 (1988); *James* v. *State*, 280 Ark. 359, 658 S.W.2d 382 (1983). Disclosure is required if the state is to produce the informant as a witness at the trial, *see* Ark. R. Crim. P. 17.5, but not if the informant is only to be referred to as someone who assisted in the investigation leading to the arrest. *See* A.R.E. 509; *Shackleford* v. *State*, 261 Ark. 721, 551 S.W.2d 205 (1977).

The court's initial ruling was correct. It would have been necessary for the state to produce the name of the informant if it had planned to use his testimony to show he participated in the crime or the manner in which it was committed. The state, however, put on no such testimony in its case in chief. The defense cross-examination of Officer Wallis went into what was said to and by the informant during the monitored calls. That opened the door for the state to discuss those conversations with the witness. *Poyner* v. *State*, 288 Ark. 402, 705 S.W.2d 882 (1986); *Robinson* v. *State*, 275 Ark. 473, 631 S.W.2d 294 (1982).

### 2. Hearsay

■ When Officer Wallis testified about the conversations between the informant and "George," counsel for Thompson made a hearsay objection. The court correctly ruled the testimony was not hearsay. Officer Wallis testified he placed the calls and monitored them. As he heard what was being said, he was not repeating what the informant told him George told the informant. He was not relating the conversations to establish the truth of the

matters asserted in them, but rather to establish that the conversations occurred. An out-of-court statement which is not offered for the truth of the matter asserted is not hearsay. *Liberto v. State*, 248 Ark. 350, 451 S.W.2d 464 (1970). *See also Jackson v. State*, 274 Ark. 317, 624 S.W.2d 437(1981); *Flaherty v. State*, 255 Ark. 187, 500 S.W.2d 87 (1973).

### 3. Sufficiency of the evidence

Thompson's directed verdict motion and his argument here that there was no substantial evidence to support his conviction emphasizes what the state did not prove, *e.g.,* no one saw him take a bet or money, no gambling devices were found in his house, the state did not show his fingerprints were on the betting forms, and the state did not prove whose writing was on them.

■ We view the evidence in the light most favorable to the appellee. *Pope v. State*, 262 Ark. 476, 557 S.W.2d 887 (1977). We note testimony from which the jury could have concluded: Thompson was seen entering and leaving the house at 1234½ W. 10th Street in North Little Rock; he was present when officers executed the search warrant; the betting slips and customer lists were found on the premises; the telephones were ringing every 60 seconds, and the callers were asking for "George;" a bet was placed by one caller during the search; the two telephones were in the name of "George A. Thompson" according to telephone company records; and the informant had earlier placed bets over the telephone at the number listed for Thompson with a person called "George."

■ The evidence was sufficient to support a verdict reached by the jury without resort to suspicion or conjecture. *Jones v. State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. This archaic law is, in my opinion, unconstitutional for vagueness. Moreover, without any valid justification it prohibits some people from doing the very things others are allowed to do. The appellant was apparently guilty of bookmaking or taking bets on horses, just as they do at the racetrack in Hot Springs. My basic disagreement is not

so much with the majority opinion as it is with the law and how it has been interpreted over the years.

I cannot understand how Ark. Code Ann. § 5-66-103(a) (1987) can be read to include making or accepting bets on horse races. The code reads as follows:

> Every person who shall keep, conduct, or operate, or who shall be interested, directly or indirectly, in keeping, conducting, or operating any gambling house or place where gambling is carried on, or who shall set up, keep, or exhibit or cause to be set up, kept, or exhibited or assist in setting up, keeping, or exhibiting any gambling device, or who shall be interested directly or indirectly in running any gambling house or setting up and exhibiting any gambling device or devices, either by furnishing money, or other articles for the purpose of carrying on any gambling house shall be deemed guilty of a felony and on conviction shall be confined in the State Penitentiary for not less than one (1) year nor more than three (3) years.

Other sections of the code are more nearly descriptive of the activities for which the appellant was convicted. Section 104 prohibits the setting up, keeping, or exhibiting of gaming devices. Section 106 establishes the penalty for betting. Then there is the greatest of all the laws in this field, Ark. Code Ann. § 5-66-116(a), which makes it illegal to bet on horse races. It reads as follows:

> It shall be unlawful to bet in this state, directly or indirectly, by selling or buying pools or otherwise, any money or other valuable thing, on any horse race of any kind whether had or run in this state or out of this state.

Naturally, it is not a violation of this act if you make bets on horse races in Hot Springs. See Ark. Code Ann. § 23-110-102 (1987). If people in Hot Springs are able to bet on horse races by the use of totalizators or pari-mutuel betting, why should the people in North Little Rock be denied the opportunity to bet on horse races in a less extravagant manner?

If people who can afford to go to Oaklawn, dressed in all their finery and driven in their expensive limousines, are allowed to place their bets in the exclusive preserve of the Jockey Club, why

should those less fortunate be denied the opportunity to engage in the same activity elsewhere at much less expense? There are no classes of citizens according to our constitutions; nevertheless, certain "classes" of people seem to think so. I do not. Article 2, section 2, of the Arkansas Constitution states:

> All men are created equally free and independent, and have certain inherent and inalienable rights, amongst which are those of enjoying and defending life and liberty; of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness. To secure these rights governments are instituted among men, deriving their just powers from the consent of the governed.

The evidence against the appellant consisted primarily of a telephone and a piece of paper called a betting slip, as well as a list of names and addresses with some figures written near the names. Compare these items with what may be found in any home and you will discover the same "evidence" — they are hardly the same devices described in § 5-66-104 that one may expect to find in a "gambling house" as established by § 5-66-103(a).

The appellant was also seen leaving or returning to his residence — on several occasions. This type of criminal activity cannot be tolerated in a law-abiding community.

There are presently too many unsolved crimes, such as burglaries and drug offenses, and too many hoodlums on the street. It is therefore counterproductive to allow the already understaffed and underpaid police departments to assign teams of several officers to catch bookies, especially in other cities. However, if this law is to be literally enforced against everyone, then I submit that the biggest gambling house of all is located on Central Avenue in Hot Springs, Garland County, Arkansas.