Charles LEE *v.* STATE of Arkansas

CR 93-602                                    862 S.W.2d 249

Supreme Court of Arkansas
Opinion delivered October 4, 1993

*William R. Simpson, Jr.*, Public Defender, by: *Thomas B. Devine III*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Charles Lee was charged and convicted of the capital murder of Phillip Cordova and aggravated robbery. He was sentenced to life imprisonment without parole for capital murder. The sole issue on appeal is whether the pretrial photographic spread used to identify Lee was unnecessarily suggestive and violative of his due process rights, requiring its suppression as well as the in-court identification. Because we find Lee's argument without merit, we affirm his conviction.

An eyewitness to the murder, Leigh Sharp, testified that she and Cordova drove into a parking lot around 1:30 a.m. on August 7, 1992, and she became nervous when she realized they were in a "bad part of town." While stopped there, she saw two men approach Cordova's truck twice and offer to sell cocaine to

Cordova which he declined. On the second attempt at a sale when Lee told Cordova to "drop the money", Sharp testified that when she leaned forward in the truck, she saw Lee shoot Cordova with a pistol. Sharp, who had been sitting on the passenger's side of the truck, left the cab and went around to the driver's side to help Cordova. Sharp testified that a third male then approached the passenger's side of the truck and she saw the man take the wallet she had left on the seat of the truck. Further, she was able to describe Lee and the other two suspects and what they were wearing. The other two suspects were picked up shortly after the crime and their clothing matched the clothing described by Sharp. Additionally, the man who Sharp said took her wallet had blood on his shirt and hands when he was apprehended.

At trial, Gary Jackson testified that Lee came over to his house and told him that he was thinking about robbing someone to get money. Jackson further testified he saw Lee again that night at the parking lot and later, around 2:30 a.m. or so, Lee ran over to Jackson's house with a .22 gun and said he had just shot someone. Additionally, Mance Settles, who Sharp identified as the one who took her wallet, testified Lee shot Cordova.

In *Fountain* v. *State*, 273 Ark. 457, 620 S.W.2d 936 (1981), we held that when a pretrial photographic identification is followed by an eyewitness identification at trial, the conviction will be set aside only if the photographic show up was so suggestive as to create a substantial possibility of irreparable misidentification. Accordingly, factors to be considered in determining the reliability of a lineup identification are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. The corrupting effect of the suggestive identification itself is weighed against these factors, and whether the identification procedure is violative of due process is determined from the totality of the circumstances. *See also Robinson* v. *State*, 275 Ark. 473, 631 S.W.2d 294 (1982). Our review of the record reflects the evidence overwhelmingly supports Sharp's identification of Lee as the one who shot Cordova. Further, her identification of Lee from the photospread was not suggestive and thus could not taint her in-

court identification.

For support, Lee cites *Foster* v. *California*, 394 U.S. 440 (1969). There, the eyewitness was unable to make a positive identification at the first lineup where Foster was placed with men considerably shorter than he. Even after the eyewitness met one-on-one with Foster, the identification was tentative with the eyewitness still indicating he was not sure Foster was the one. At a second lineup the eyewitness was finally convinced Foster committed the crime and positively identified him. Foster was the only subject who was used in both lineups. The Supreme Court reversed the conviction, holding the procedure "so undermined the reliability of the eyewitness identification as to violate due process" by making the ultimate identification of Foster "virtually inevitable". *Id.* at 443.

In our case, the photospread in question was composed of six photographs of young males, showing front views of their heads. All of them appear to be dressed in orange overalls. It is evident that at least four men in the photospread have a sign hung around their necks, and of those four, part of the sign is visible in three of the photographs. Lee's photograph is one of those three.

Lee argues that his photograph differs from the other two because, while the letters "LRPD" appear on the sign in those, his photograph is the only one in which an identification number is also visible. He further argues that the procedure leading to the identification by Sharp is tainted because it occurred three days after the crime, after she had already been shown two photospreads on the day of the shooting, and was unable to identify anyone as being involved in the crime. Finally, he argues that Sharp's in-court identification of him should be suppressed because it was based solely on her identification at the photospread.

Lee's reliance on *Foster* is without merit. From the record, it is clear that the trial court made its determination based on all the evidence presented. The following factors lending reliability to Sharp's identification of Lee are: (1) she had the opportunity to observe Lee both from a distance as he approached the truck twice, and at close range when she leaned forward in the truck and had eye-contact with him; (2) evidence was presented that the parking lot was well lit and Sharp's level of attention was

heightened because of concern about her safety in the particular neighborhood; (3) the accuracy of Sharp's prior description of two of the assailants and their clothing was verified by the police, and she was able to identify all three suspects from three photospreads; (4) Sharp identified Lee's photograph immediately and without hesitation; and (5) the identification of Lee took place only three days after the crime.

Unlike the appellant in *Foster*, Lee's photograph was used in only one photospread. In another photospread, which does not contain Lee's picture, there were also six photographs and part of a number is visible in only one of them. From this photospread, Sharp identified the man who was with Lee on Cordova's side of the truck. That man's photograph is not the one in which the number appears. Thus, this evidence demonstrates that the display of a number alone was not suggestive, and, in this case, did not result in the inevitable selection of Lee's photograph because a number was visible. In addition, Sharp testified that she never noticed any letters or numbers in the photographs when she identified Lee.

Finally, because Lee's photograph was not included in the first two photospreads, he is unable to argue that Sharp's identification of him was suggested by the previous photospreads. Witnesses testified Sharp was distraught and in shock immediately following the crime, and Sharp, herself, testified that she did not even remember seeing the photospreads at that time.

It is for the trial court to determine if there are sufficient aspects of reliability surrounding the identification to permit its use as evidence, and then it is for the jury to decide what weight the identification testimony should be given. *Wilson* v. *State*, 282 Ark. 551, 669 S.W.2d 889 (1984). The preliminary ruling by the trial court is on a mixed question of law and fact and will not be reversed unless clearly erroneous. *Gonzales* v. *State*, 301 Ark. 98, 782 S.W.2d 359 (1990); *Banks* v. *State*, 283 Ark. 284, 676 S.W.2d 459 (1984). Based on the totality of the circumstances, we find no error by the trial court in determining that Sharp's pretrial identification of Lee was sufficiently reliable, and not suggestive or tainted as violative of due process. Therefore, neither the pretrial identification nor the in-court identification of Lee warranted suppression.

310

The record has been reviewed and no prejudicial errors were found in rulings adverse to Lee. Affirmed.