Dan MATTHEWS *v.* STATE of Arkansas

CR 92-1383                                              854 S.W.2d 339

Supreme Court of Arkansas
Opinion delivered June 1, 1993

*Kinney & Snowden,* by: *William G. Snowden,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Dan Matthews, was convicted of rape and kidnapping and sentenced as an habitual offender to 140 years imprisonment. He argues the Trial Court erred by (1) not recusing generally after recusing from hearing a motion for attorney's fees and costs, (2) refusing to grant relief due to the State's violation of Matthews' right to a speedy trial, and (3) refusing to suppress a pretrial identification given by the victim. We find no error and affirm.

The State alleged that in the early morning of January 30, 1991, the female victim went to a restaurant to eat. While inside, she was approached by a man who asked to be taken to the hospital because his wife had been in a car accident. She agreed, and on the way to the hospital the man pulled out a knife and told her to stop the car in a parking lot. He then threatened her with the knife and raped her.

The victim stated she had several opportunities to see the assailant's face, and she described his facial features. She testified the man told her he worked at Con-Agra in Batesville. The investigating officer prepared a photo lineup which included photographs of six men she believed approximately matched the victim's description. The victim was shown the lineup the day after the assault and was "almost positive" Matthews was her assailant. During a hearing on a motion to suppress, the victim testified she went to high school with one suspect in the lineup and had seen two others before.

A week after viewing the photo lineup the victim was taken to Con-Agra where she viewed employees leaving the plant and positively identified Matthews. Matthews was arrested February 1, 1991. At the trial, held May 5, 1992, the victim testified she was one hundred percent sure Matthews committed the crime.

## 1. Disqualification

Prior to trial, appointed defense counsel moved for interim attorney's fees and costs incurred in connection with the case. A hearing was conducted on the motion. Judge John Dan Kemp, on whose docket the case appeared, recused from the hearing on the motion. Prior to the case proceeding to trial, defense counsel moved for Judge Kemp's recusal from the case generally. Judge Kemp declined.

In his order responding to the recusal motion Judge Kemp explained that he had recused from hearing the fees motion because at the time he owned a building in which defense counsel rented office space. His financial relationship with counsel could have been perceived as having an effect on his decision whether to award the fees sought. By the time of the trial, the landlord-tenant relationship between the judge and counsel had ended, and thus Judge Kemp denied the motion.

Judges must refrain from presiding over cases in which they might be interested and avoid all appearances of bias. Ark. Const. art. 7, § 20; *see also* Arkansas Code of Judicial Conduct Canon 3(C) (1988); *City of Jacksonville v. Venhaus*, 302 Ark. 204, 788 S.W.2d 478 (1990); *Patterson v. R.T.*, 301 Ark. 400, 784 S.W.2d 777 (1990). The matter of whether to disqualify is to be determined in the sound discretion of the judge in question, and we will not reverse absent abuse of discretion. *Woods v. State*, 278 Ark. 271, 644 S.W.2d 937 (1983).

While it was proper for Judge Kemp to avoid the appearance of impropriety by declining to hear a matter in which he could have been thought to have a financial interest, we see no reason why he should have further recused from the entire case. This situation is not like the one in *Hobson v. Cummings*, 259 Ark. 717, 536 S.W.2d 132 (1976), where the Trial Court continued to conduct ancillary matters after recusing from the case generally. In that case our decision that the judge improperly conducted a contempt proceeding was founded upon the order assigning the case to another judge. The order specifically included all ancillary proceedings.

Nor is this case like *Bolden v. State*, 262 Ark. 718, 561 S.W.2d 281 (1978), in which we wrote that a trial judge who

disqualified "from participating in [the] case" at the beginning of a pretrial conference lost jurisdiction except to "make the proper transfer . . . or take . . . steps for the selection of another judge." Prior to the assignment of another judge, the judge who had disqualified selected and instructed a jury commission and ruled on a motion challenging the charges against the defendants. We held those acts were improper. The distinction from the case now before us is obvious.

■ Although we have found no Arkansas cases directly on point, there is authority for the proposition that, absent a statutory provision to the contrary, a determination of disqualification will not prevent a judge from reassuming full jurisdiction if the disqualification has been removed. *See, e.g., Miller-Vidor Lumber Co.* v. *Schreiber*, 298 S.W. 154 (Tex. Civ. App. 1927); *Bank of Marlinto* v. *Pocahontas Development Co.*, 106 S.E. 881 (W.Va. 1921); *Disqualification of a judge in pending case as subject to revocation or removal*, 162 A.L.R. 641 (1946).

Two Florida cases, *Florida Patient's Comp. Fund* v. *Von Stetina*, 474 So.2d 783 (Fla. 1985), and *Margulies* v. *Margulies*, 528 So.2d 957 (Fla. Dist. Ct. App. 1988), are particularly instructive. In the *Von Stetina* case, Justice Ehrlich of the Florida Supreme Court partially recused from hearing the issue of attorney's fees but participated in the remaining issues on appeal. In denying a general suggestion of disqualification, Justice Ehrlich stated the attorney's fee issue was legally and procedurally severable from the remaining issues. The opinion of the Court specifically approved the procedure.

In the *Margulies* case, a Florida Court of Appeals recognized the general rule that a disqualified trial judge is prohibited from taking any further action in the case but distinguished the *Von Stetina* case because it involved a partial recusal on a severable issue.

■ Judge Kemp's disqualification was only with respect to the hearing on attorney's fees and not from the entire case. He considered the fees issue to be severable from the merits of the criminal trial, and we agree. The reason for his disqualification from the hearing on fees had disappeared by the time the recusal motion was made. There was no abuse of discretion.

## 2. *Speedy trial*

■ Matthews argues the Trial Court erred by not releasing him on his own recognizance nine months after he was arrested as required by Ark. R. Crim. P. 28.1(a). Alleged violation of Rule 28.1(a) is not a basis for reversal. *Jurney* v. *State*, 298 Ark. 91, 766 S.W.2d 1 (1989).

He also contends, however, that the State failed to bring him to trial within 12 months from the date of his arrest or the date the information was filed as required by Ark. R. Crim. P. 28.1(b), and thus the charges should have been dismissed.

■ Matthews was arrested and charged February 1, 1991. Barring excluded periods, he should have been brought to trial by February 1, 1992. The trial began May 5, 1992, 93 days after the 12 month period in Rule 28.1(b) had expired. The burden was on the State to show the 93 day delay was caused by Matthews' conduct or was otherwise legally justified. *Glover* v. *State*, 307 Ark. 1, 817 S.W.2d 409 (1991).

Matthews moved for a preliminary hearing on April 12, 1991. A docket notation of May 14, 1991, showed the motion was taken under advisement after a hearing. The Court issued its ruling June 14, 1991. Arkansas R. Crim. P. 28.3(a) permits the exclusion of time during which a pretrial motion is held under advisement, not exceeding 30 days. *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990). The Court thus properly found 30 days excluded from the speedy trial calculation.

■ Another docket notation showed the case continued on October 31, 1991, on Matthews' motion, and the trial rescheduled for January 7, 1992. Arkansas R. Crim. P. 28.3(c) provides the period of delay resulting from a continuance granted at the defendant's request is excluded. The period of delay is calculated from the date the continuance is granted until the subsequent date contained in the order. The Court thus properly excluded an additional 68 days. As these two periods add up to 98 days of excluded time, we need not address other periods the State alleges to have been excludable.

### 3. Pretrial identification

■ Matthews argues the pretrial identification procedures were unduly suggestive because he was the only suspect in the first photo lineup who was included in the second "lineup" at the Con-Agra plant. Relying exclusively on *Foster* v. *California*, 394 U.S. 440 (1969), he contends these pretrial identifications should not have been admitted. He does not contest the admissibility of the victim's in-court identification, and we must assume it was reliable. When a photographic identification is followed by an eyewitness identification at trial, the conviction will be set aside only if the photographic show up was so suggestive as to create a substantial possibility of misidentification. *Fountain* v. *State*, 273 Ark. 457, 620 S.W.2d 936 (1981); *Robinson* v. *State*, 275 Ark. 473, 631 S.W.2d 294 (1982).

Matthews argues the factual similarity of the case to *Foster* v. *California*, *supra*, requires that the photo lineup and the resulting tainted identification at the Con-Agra plant be suppressed. We find the *Foster* case easily distinguishable. There, a witness was unable to make a positive identification during a lineup so police asked him to view a second lineup. The accused was the only person in the second lineup who had been in the original. Afterwards, the victim made a positive identification of the accused. The Supreme Court reversed the conviction and stated:

> The suggestive elements in this identification procedure made it all but inevitable that the victim would identify petitioner whether or not he was in fact "the man." This procedure so undermined the reliability of the eyewitness identification as to violate due process.

*See also Moser* v. *State*, 287 Ark. 105, 696 S.W.2d 744 (1985); *Glover* v. *State*, 276 Ark. 253, 633 S.W.2d 706 (1982). The fact that the accused was the only suspect included in the second lineup who had been in the first was only one item the Court considered in determining the procedure to be unduly suggestive and thus unreliable.

■ Here, the victim made an "almost positive" identification of Matthews in the photo lineup. There is nothing to suggest that the police knew the victim was acquainted with some of the

persons pictured. While we understand Matthews' suggestion that viewing the employees leaving the Con-Agra plant was analogous to conducting a second lineup, the viewing there was a very different sort of event. Unlike the *Foster* case, there is no legitimate insinuation that the police arranged Matthews' appearance after the victim had been shown his picture in order to suggest him as the culprit.

Affirmed.