452 S.E.2d 696

**In the Matter of Robert Kelly MEANS, Family Law Master, Cabell County.**

No. 21793.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 13, 1994.

Decided Nov. 23, 1994.

George A. Stolze, Huntington, for Robert Kelly Means.

Charles R. Garten, Judicial Disciplinary Counsel, Charleston.

MILLER, Retired Justice: [1]

This is a disciplinary proceeding brought by the Judicial Investigation Commission (Commission) which claims that the Judicial Hearing Board (Board) erred in failing to find that Family Law Master Means (Mr. Means) violated Canons 1, 2A, 3C(1), and 5C(1) of the Judicial Code of Ethics (1989). These violations center on a domestic case that was handled by Mr. Means prior to

1. Pursuant to an Administrative Order entered by this Court on September 13, 1994, retired Justice Thomas B. Miller was recalled for the September 1994 term because of the physical incapacity of Chief Justice W.T. Brotherton, Jr.

January 1, 1993 when the Judicial Code of Ethics was in effect.[2]

The facts surrounding this case are not substantially disputed. Mr. Means presided over a domestic case in Cabell County where the husband was represented by David Lockwood, a Huntington attorney. At some point during the proceeding, the wife, through her attorney, asked Mr. Means to disqualify himself because of his financial interest with Mr. Lockwood in a corporation known as Kellwood Farms, Inc. This corporation owns 106 acres located in Cabell County. Mr. Lockwood and Mr. Means equally own all shares of the corporation. For some years, Mr. Means and his family have lived in a home located on the property, which he has substantially rehabilitated. He pays no rent to the corporation.

When the motion to disqualify was made, Mr. Means declined to do so. A Writ of Prohibition to compel Mr. Means' removal was filed with the Circuit Court of Cabell County, which refused to order Mr. Means' removal.[3] Mr. Means continued to sit on the case, and subsequently the wife filed a complaint with the Commission. After an investigation, the Commission found probable cause to believe a violation of Canon 5C(1) had occurred. In material part, this Canon states: "(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality ... or involve him in frequent transactions with lawyers...."[4]

The Board, after hearing the matter, issued an opinion on May 11, 1994, in which it found no ethical violation on the part of Mr. Means. It gave no reasons for the dismissal except to state that the Commission had failed to prove any violations by clear and convincing evidence. The Board observed that Canon 4D of the current Code of Judicial Conduct precludes a judge from having "frequent transactions or continuing business relationships with the lawyer or other persons likely to come before the Court on which the judge serves."[5] For the following reasons, we disagree with the Board's analysis of former Canon 5C(1) because we find it to be substantially similar to the current Canon 4D(1).

■ We have traditionally stated that in reviewing a decision of the Board, we will make an independent evaluation of its recommendations, as set out in syllabus point 1 of *Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990):

"'The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.' Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert*, [165 W.Va. 233], 271 S.E.2d 427 (W.Va.1980).' Syllabus, *Matter of Gorby*, [176] W.Va. [11], 339 S.E.2d 697 (1985)."

■ A further elaboration of this principle is contained in Syllabus point 3 of *Matter of Hey*, 188 W.Va. 545, 425 S.E.2d 221 (1992):

Under Rule III(C)(13) [1992] of the *West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters*, the Judicial Hearing Board is

2. The current Code of Judicial Conduct became effective January 1, 1993.

3. This action took place prior to the adoption of the Rules of Practice and Procedure for Family Law Masters, which became effective October 1, 1993. Disqualification of Family Law Masters is covered by Rules 40 through 46. *See also, State ex rel. Hendricks v. Hrko*, 189 W.Va. 674, 434 S.E.2d 34 (1993).

4. The entire text of Canon 5C(1) states:
   C. Financial Activities.
   (1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.

5. The entire text of Canon 4D(1) of the current Code of Judicial Conduct is:
   D. Financial Activities.
   (1) A judge shall not engage in financial and business dealings that:
   (a) may reasonably be perceived to exploit the judge's judicial position, or
   (b) Involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves.

limited to making a "written recommendation, which shall contain findings of fact, conclusions of law and proposed disposition." Because of the Board's limited judicial capacity, the Board is without authority to make a legal decision that is entitled to preclusive or res judicata effect.

We are not cited, nor have we found, a case in this jurisdiction in which a judge has had this type of relationship with an attorney. However, there are cases from other jurisdictions which have considered this issue. In *Matthews v. State,* 313 Ark. 327, 854 S.W.2d 339 (1993), the trial court judge had initially recused himself from a criminal case because the defense attorney was a tenant in a building that the judge owned. Prior to trial, the defense attorney had ceased to be a tenant. The judge, deeming that the disqualifying interest was over, then proceeded to try the case. This action was challenged, but, on appeal, was sustained by the Arkansas Supreme Court. Its opinion began by agreeing that the original disqualification was proper because "[j]udges must refrain from presiding over cases in which they might be interested...." 313 Ark. at 330, 854 S.W.2d at 341. The Court concluded that once the disqualifying circumstance was removed, the judge might resume jurisdiction over the case.

A similar situation existed in *In re Fiftieth District Court Judge,* 193 Mich.App. 209, 483 N.W.2d 676 (1992), where the judge jointly owned property with a law firm on which the firm's building was located. One of the members of the firm appeared as defense counsel in a criminal case before the judge. The prosecuting attorney moved that judge disqualify himself, but the motion was refused. The appeals court determined that the judge should have disqualified himself for the following reasons:

"... The ownership of the property on which the main office and the annex office of attorney Hatchett's law firm are located, the payment of the property taxes by the firm over the years, and the payment and discharge of a mortgage for which Judge Brown was jointly liable certainly gives the appearance of impropriety and reflects adversely on the judge's impartiality and ability to fairly administer justice ...

Moreover, we believe that in matters in which a judge has a financial interest with an attorney appearing in the matter, the judge has a duty to disclose the relationship on the record and to recuse...." 193 Mich.App. at 214, 438 N.W.2d at 679 (1992)

A slightly different pattern existed in *Zoline v. Telluride Lodge Ass'n,* 732 P.2d 635 (Colo.1987), where the trial judge owned controlling interest in a bank in which the Telluride Lodge Association was a substantial depositor. The Telluride Lodge was a condominium association that had sued to foreclose liens against various owners of units. The owners' attorney moved to disqualify the judge, and the judge refused. After an adverse verdict, the owners appealed, and the Colorado Supreme Court concluded that the judge's financial interest through control of the bank was a basis for disqualification. The Court cited its judicial Canon, which is similar to our 5C(1), and stated:

If the trial judge's decision would affect him in a pecuniary way, however, this constitutes a private interest. A trial judge then has no alternative other than to disqualify himself ... Also, an interest relating to the subject matter of the litigation may require disqualification.

\* \* \* \* \* \*

The trial judge owned controlling shares of stock in the Bank before and during the trial, and the respondent was a substantial customer....

The judge's interest here is a private one, based on his financial ownership and control of the Bank. We agree that the judge may not have enjoyed an immediate and direct benefit (or loss) due to the outcome of the litigation. However, he could be affected when a substantial depositor was plaintiff in the litigation before him. Success or failure of a substantial customer at trial could affect the Bank itself, hence the presiding judge.

*Id.* at 639–40 (citations omitted).

■ The conclusions found in the foregoing cases point to the basic premise of Canon 5C(1) of the Judicial Code of Ethics—it is impermissible for a judge to have continuing financial and business dealings with a lawyer who appears before the judge. The joint ownership of Kellwood Farms, Inc., by attor-

ney Lockwood and Mr. Means, whose home is on the property owned by Kellwood, is an impermissible financial and business interest under the foregoing Canon. Mr. Means should have recused himself from Mr. Lockwood's case.[6]

■ For this reason, we reverse the judgment of the Board and find that Mr. Means has violated Canon 5C(1). We determine an appropriate sanction to be a public reprimand, which is hereby issued.[7]

Public Reprimand Issued.

BROTHERTON, J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

---

6. As of July 1, 1994, Mr. Means was no longer a Family Law Master.

7. Because we have found a violation of Canon 5C(1), we decline to address Canons 1, 2A, and 3C(1). These Canons deal with more general standards of judicial conduct. Canon 1 requires a judge to "observe high standards of conduct so that the integrity and independence of the judiciary may be preserved." Canon 2A is similar to Canon 1, requiring a judge to "... conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 3C(1) requires that a "judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned."