512 S.E.2d 870

**In the Matter of C. Page HAMRICK, III, Family Law Master for Kanawha County.**

No. 24482.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1998.

Decided Dec. 14, 1998.

Charles R. Garten, Esq., Judicial Disciplinary Counsel, Charleston, West Virginia.

Michael C. Allen, Esq., Charleston, West Virginia, Attorney for Hamrick.

PER CURIAM:

This judicial disciplinary proceeding was submitted to this Court pursuant to Rules 4.9 and 4.11 of the West Virginia Rules of Judicial Disciplinary Procedure. On October 9, 1997, the Judicial Investigation Commission [hereinafter "Commission"] filed a complaint with the West Virginia Judicial Hearing Board [hereinafter "Board"] against family law master C. Page Hamrick, III. The Commission charged family law master Hamrick with violating Canon 3B(4) of the Code of Judicial Conduct. The Board conducted a hearing on the matter in May 1998 and recommended that the charges be dismissed.

This Court has before it the Board's recommendation, all matters of record, and the briefs and argument of counsel. For the reasons discussed below, we adopt the Board's recommendation.

I.

On March 20, 1997, family law master Hamrick conducted a hearing on a motion for judgment for medical support arrearages filed on behalf of Ms. Noreen Adams by the Child Advocates' Office. Ms. Adams and her ex-husband were divorced in 1992, and pursuant to the divorce decree, Mr. Adams was ordered to pay the medical bills for the parties' minor child. Subsequent to the divorce, Ms. Adams notified the Child Advocates' Office that her ex-husband had failed or refused to pay some of the child's medical bills. Upon investigation, Mr. Adams claimed that he had paid the bills. Because of the dispute, a hearing was scheduled before family law master Hamrick.

At the hearing, Ms. Adams appeared pro se. Mr. Adams was present in person and by counsel, and the Child Advocates' Office appeared by its attorney. While Ms. Adams

was testifying, the following exchange occurred:

Mr. Halkais [1]: Did you send a note to Mr. Adams that Eckerd's would not accept a medical card?

Ms. Adams: I was not Court ordered to do that and I did not do that. I spoke with the Child Support Enforcement Office who told me to send them all the bills.

Mr. Halkais: Do you have a medical card from PEIA.

Ms. Adams: My son carries it.

Mr. Halkais: Do you recall this judge, Law Master Hamrick, advising you, advising Mr. Adams to present you with a medical card and the procedure to be followed when you . . .

Ms. Adams: (Interrupting) It was not court ordered for him to give me the procedure that I would . . .

FLM Hamrick: It was lady, damn it, now that is a irresponsible statement on your hand. I vaguely remember that, telling you what to do. Don't tell me I didn't say that. (Striking the gavel). I did say that, that is a court order when it comes out of my mouth. That is a blatant lie on your part.

Ms. Adams: I apologize.

FLM Hamrick: That galls me lady. I distinctly remember that. Telling you that. Put that in the court order. Maybe she can read it. Since you couldn't listen to me. (Banging the gavel.) I don't like to be called a liar. (Tells the bailiff everything was all right and he could leave.) It's disingenuous of you.

Mr. Halkais: I need to catch my breath a second, your honor, okay.

Ms. Adams: (Crying.) It's better than being yelled at again. Anything he wants. I will agree to anything you want, I agree to anything just let me go home because . . .

FLM Hamrick: Just have a seat. I am sorry I yelled at you, but that was a blatant misrepresentation of this court.

Based upon a complaint from Ms. Adams, the Commission filed charges against Family

Law Master Hamrick with the Board. The Commission alleged that family law master Hamrick violated Canon 3(B)(4) of the Code of Judicial Conduct based on his conduct during the March 20, 1997 hearing. Canon 3(B)(4) provides:

A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

Following a hearing on the matter, the Board voted to dismiss the charges. Thereafter, the Commission filed an objection with this Court.

## II.

▮▮▮ Pursuant to Rule 4.5 of the Rules of Judicial Disciplinary procedure: "In order to recommend the imposition of discipline on any judge, the allegations of the formal charges must be proved by clear and convincing evidence." *See also* Syllabus Point 1, *In the Matter of Hey,* 192 W.Va. 221, 452 S.E.2d 24 (1994); Syllabus Point 2, *In the Matter of Egnor,* 186 W.Va. 291, 412 S.E.2d 485 (1991). Traditionally, we independently review the record to determine whether the findings of fact and recommendation of the Board are appropriate. In Syllabus Point 1 of *West Virginia Judicial Inquiry Comm'n v. Dostert,* 165 W.Va. 233, 271 S.E.2d 427 (1980), we stated: "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." *See also* Syllabus Point 1, *In the Matter of Means,* 192 W.Va. 380, 452 S.E.2d 696 (1994); Syllabus Point 1, *In the Matter of Kaufman,* 187 W.Va. 166, 416 S.E.2d 480 (1992). Nonetheless, we have recognized that "the Hearing Board is in a better position to resolve the factual disputes of a particular case." *In the Matter of Browning,* 192 W.Va. 231, 234 n. 4, 452 S.E.2d 34, 37 n. 4 (1994). As we explained:

The members of the Hearing Board hear the testimony of the witnesses firsthand and are much closer to the pulse of the

---

1. Anthony Halkais represented Mr. Adams.

hearing to resolve such issues as credibility and conflict of facts. Substantial consideration, therefore, should be given to the findings of fact of the Hearing Board. This consideration does not mean that this Court is foreclosed from making an independent assessment of the record, but it does mean that absent a showing of some mistake or arbitrary assessment, findings of fact are to be given substantial weight. In this context, we place the burden on the party challenging the Hearing Board's findings of fact to demonstrate that the findings are not supported by evidence in the record. To ignore the Hearing Board's findings would render its important adjudicatory role a useless gesture, deprive the parties of peer review, and deprive this Court of the most important benefit, the Hearing Board's collective and evaluative judgment. To be specific, in no case will this Court act as a rubber stamp. Although the Hearing Board's findings of fact are given respective consideration, they are not binding on this Court.

*Id.*

In this case, the Board recommends that the charges against family law master Hamrick be dismissed. The Board's recommendation is based upon its finding that family law master Hamrick's comments were made in order to obtain control of his courtroom. The Commission objects to the recommendation and maintains that family law master Hamrick's "tirade" was unprovoked thereby violating Canon 3(B)(4).

An examination of the record discloses that Ms. Adams was requesting the court to order her ex-husband to pay medical bills which he had in fact already paid.[2] When questioned about whether she had followed the procedure set forth by family law master Hamrick in the divorce order for obtaining payment of the medical bills, Ms. Adams claimed that she had never been given such instructions. Apparently, contrary to what Ms. Adams said, family law master Hamrick had indeed set forth a procedure for Ms. Adams to follow, and when she misrepresented this fact, he rebuked her and banged his gavel.

Initially, we are compelled to state that we certainly do not condone the family law master's conduct. However, a fair review of the evidence clearly indicates that the evidence does support the Board's findings and recommendation. The record shows that Ms. Adams filed a false claim[3], attempted to evade answers to questions about the claim during the hearing, and misrepresented the fact that family law master Hamrick had previously instructed her regarding how to obtain payment for her son's medical bills. Considering the circumstances as set forth in the record, we accept the Board's recommendation that family law master Hamrick's actions do not warrant discipline.

■ Although we find that no violation of Canon 3(B)(4) occurred in this case, we take this opportunity to once again advise that "judges may be appropriately disciplined for using abusive, insulting, intemperate, obscene, profane, threatening, vulgar, or other offensive language." *In re Pauley,* 173 W.Va. 228, 235, 314 S.E.2d 391, 398 (1983) (citations omitted). Such conduct is not only unbecoming of a judicial officer, but also impairs the fairness required in all legal proceedings. As judicial officers, it is our duty to set an example of the kind of conduct necessary for an effective and productive adversarial system. The importance of providing a dignified and impartial atmosphere for litigants, jurors, witnesses, lawyers and others who appear in our courtrooms cannot be overstated. This Court has repeatedly and strongly emphasized the need to raise the level of civility among the participants in the

---

2. Ms. Adams claimed by affidavit that Mr. Adams had not paid medical bills for their son totaling $826.00. During the hearing, Mr. Adams produced several canceled checks showing that he had paid for most of his son's medical bills. In the end, it was determined that Ms. Adams only had a claim for $25.00.

3. We note that the record does not show that Ms. Adams intentionally filed a false claim. Appar-

ently, Ms. Adams submitted some of the unpaid bills to the Child Advocates Office in 1995. The record suggests that Ms. Adams may have been given a blank affidavit to sign for purposes of filing a claim for the unpaid bills. The record further suggests that the Child Advocate's Office may not have verified whether the bills had been paid prior to the hearing.

litigation process. This requires judges, lawyers, and litigants to be courteous, patient, and understanding with each other.

The tone and tenor of family law master Hamrick's remarks are of concern. He yelled loudly and was brusque with Ms. Adams. We believe that family law master Hamrick could have easily addressed the situation with Ms. Adams in a more patient and courteous manner. His actions were not appropriate and definitely bordered on the need for discipline for violation of Canon 3(B)(4). However, as discussed above, because the inquiry in this case is fact driven and because the record supports the Board's findings of fact, and since we must give substantial consideration and deference to such findings, we adopt its recommendation. Accordingly, the charges against family law master Hamrick are dismissed.[4]

Charges dismissed.

Justice McGRAW did not participate in the decision of this case.

MAYNARD, Justice, concurring:

I concur with the majority but write separately because I think that the majority was too hard on family law master Hamrick and too easy on Ms. Adams. Ms. Adams engaged in a deliberate abuse of the judicial process by insisting that litigation she knew was frivolous and baseless continue to the point that an unnecessary hearing was held. She claimed that she had paid certain medical bills for her son and was entitled to reimbursement from her former husband. Although Mr. Adams produced canceled checks prior to the hearing to prove that he had paid the medical bills, Ms. Adams insisted that a hearing be scheduled. At the hearing, it was determined that Mr. Adams only owed Ms. Adams $25.00 for a bill which she had never submitted to him. On top of that, during her testimony, Ms. Adams falsely misrepresented prior orders of the court.

Ms. Adams wasted valuable time of the court, and it is unfortunate that there are no consequences for her actions. I further think that because the charges were dismissed against family law master Hamrick, he should be entitled to payment of his attorney fees pursuant to Rule 4.13 of the West Virginia Rules of Judicial Disciplinary Procedure.

---

4. Rule 4.13 of the West Virginia Rules of Judicial Disciplinary Procedure provides:

Where a judge is exonerated for any reason and formal charges dismissed at any stage of the proceeding, the judge shall be entitled to reasonable attorney fees which shall be paid by the State. In order to be reimbursed for such fees, however, the attorney for the judge must have contacted the Administrative Director of the Courts prior to any services being rendered in order to obtain advance approval of the fee schedule.

Because counsel for family law master Hamrick did not request reimbursement before rendering his services pursuant to Rule 4.13, the State shall not pay his fees.