FILED
**March 26, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-0907 – *Timothy Jarrell v. The City of Nitro, West Virginia*

Wooton, Justice, dissenting:

The central issue before the Court is whether Sgt. Timothy Jarrell with the Nitro Police Department was properly terminated from his employment with the respondent The City of Nitro, West Virginia, for using a lateral carotid restraint[1] to effect the arrest of Jared Hester, an unarmed, nonthreatening individual, for public intoxication. The circuit court, in reversing and vacating the Decision Order of the Nitro Police Department Civil Service Commission ("the Commission"), found that the evidence supported the officer's termination from employment. However, the majority reverses the circuit court's order and orders the officer's reinstatement. Because I would affirm the circuit court's decision that the Commission's decision was clearly wrong and contrary to the evidence, I respectfully dissent.

This Court has held that "'[a] final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal *unless it is clearly wrong* or is based upon a mistake of law.' Point 1, Syllabus, *Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971)." Syl. Pt. 1, *City of Logan v. Dingess*, 161 W. Va. 377, 242 S.E.2d 473 (1978) (emphasis added). While this Court, and the circuit court, do give deference to the factfinder in an administrative hearing, *see Frymier-Halloran v.*

_____

[1] As the majority states in note 2 of the opinion, "the parties and the record also refer to this maneuver as a 'lateral vascular restraint' or a 'choke hold.'"

1

*Paige*, 193 W. Va. 687, 458 S.E.2d 780 (1995),[2] we have also said that "'in no case will this Court [or the circuit court] act as a rubber stamp.'" *See In re Hamrick*, 204 W. Va. 357, 359, 512 S.E.2d 870, 872 (1998) (quoting *In re Browning*, 192 W. Va. 231, 234 n.4, 452 S.E.2d 24, 37 n.4 (1994)).

Despite this Court's clear admonition that it will not act as a "rubber stamp" of an administrative body's determination, that is exactly what occurred in this case. There are two predominate fallacies in the majority's decision. The first fallacy arises from the majority's attempt to portray Sgt. Jarrell as being weaker than Mr. Hester and in fear of receiving serious injury. Apparently, the majority finds these characterizations necessary as a means of rationalizing why the officer was justified in using a lateral carotid restraint in effecting Mr. Hester's arrest on a petty offense. The majority states: "Sergeant Jarrell had attempted to handcuff Mr. Hester, who is 'a larger man of superior size and perceived strength,' but Mr. Hester resisted; . . . Sergeant Jarrell reasonably perceived the threat of receiving serious injury if Mr. Hester was not brought quickly under control." Let there be no mistake, it was Sgt. Jarrell who had the upper hand in this case. According to Nitro Police Department Arrest Report of Jared Devone Hester, which was admitted into evidence below, he was twenty-nine years old, was 6'4'', and weighed 235 pounds. Sgt.

---

[2] In *Frymier-Halloran*, the Court found that the "clearly wrong" standards of review "are deferential ones which presume the agency's actions are valid *as long as the decision is supported by substantial evidence . . . .*" 193 W. Va. at 695, 458 S.E.2d at 788 (emphasis added).

Jarrell testified that he weighed the same as Mr. Hester and was just over 6'1''. The video evidence obtained from a hotel security camera[3] ("the security video") of the encounter confirms that the two men were roughly the same build, a fact admitted by Sgt. Jarrell during cross-examination. The majority, however, glosses over the fact that Sgt. Jarrell is a well-trained police officer[4] and holds a second-degree black belt in judo, a second-degree black belt in jiu-jitsu, a second-degree black belt in taekwondo, a second-degree black belt in karate, and a third-degree black belt in taiho-jutsu. Sgt. Jarrell testified that he was certified as an instructor in those disciplines of martial arts and is "recognized as a martial arts – or a defensive tactics instructor through[out] the State, as well as a use of force instructor through[out] the State[.]" Conversely, Mr. Hester was an intoxicated, nonthreatening, unarmed man. The security evidence plainly shows that he "made no threatening movements or gestures before being placed in a choke hold[.]" As a matter of fact, the security video evinces little, if any, movement by Mr. Hester at the time the officer rendered him unconscious.

---

[3] The majority adopts the Commission's position that the security video "is black and white, [and] has low resolution," and also finds that the camera was positioned "some distance away from Mr. Hester and Officer Jarrell." While the security video is without audio and is not high quality, the camera was not positioned so far away that its video did not clearly capture the encounter between Sgt. Jarrell and Mr. Hester which results in Mr. Hester being rendered unconscious.

[4] Sgt. Jarrell testified that he had training in "defense tactics and use of force."

3

The second fallacy stems from the majority's mischaracterization of the review undertaken by the circuit court, all in order to support its decision to reverse and remand this case so that the officer is reinstated to his employment. In this regard, the majority focuses upon the circuit court's review of the Commission's decision as one in which the circuit court merely "overturn[ed] findings of fact simply because [it] would have decided [them] differently." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) ("[A] reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the [lower tribunal's] account of the evidence is plausible in light of the record viewed in its entirety."). That is simply not what occurred in this this case; the record demonstrates that the circuit court undertook a thorough review of all the evidence supporting the Commission's decision, focusing upon the critical evidence surrounding Mr. Hester's arrest, to wit: the testimony of Mr. Hester, the testimony of Sgt. Jarrell and the security video. The appropriate standard of review is set forth in syllabus point one of *In re Tiffany Marie S.*: "[F]indings [of fact] shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, *the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed*." *Id*., Syl. Pt. 1, in part (emphasis added).

There is ample evidence in the record to support the circuit court's judgment in this case. First, Mr. Hester testified that Sgt. Jarrell approached him while he was

4

standing in front of the hotel and instructed him to "[p]ut your hands behind your back." Mr. Jarrell stated that he "just stood there, and when he kind of came up behind me, he kind of took my – I believe it would've been my right arm and put it behind my back." Mr. Hester further testified as follows:

> Q: Did you – when he did that, did you resist him in any way?
>
> A: No.
>
> Q: Did you engage in any physical altercation with him there at that Comfort Inn that night?
>
> A: Well, yes.
>
> Q: Did you attack him?
>
> A: No.
>
> Q: What was the physical altercation that you had with him?
>
> A: Well, at the point that he came around behind me and took my hand, he quickly said "Stop resisting," and put his right arm around my neck, and that was about it I remember waking up on – from being unconscious.
>
> Q: Were you – were you resisting him?
>
> A: No.
>
> Q: Okay. And you were – you were actually rendered unconscious?
>
> A: Yes.

Next, Sgt. Jarrell testified that when he told Mr. Hester that he was under arrest, Mr. Hester had his arms crossed. According to Sgt. Jarrell, Mr. Hester was "clinching [sic] his fist" and "[i]n my mind, he's contemplating swinging at me or hitting me in the face, so he is slightly belated, and he's pumping his fist. So[,] I'm thinking he's

5

left-handed, he's going to swing with his – with his left arm." Sgt. Jarrell also testified that Mr. Hester pulled away from him and "turns his back towards" him. At this point, Sgt. Jarrell stated that he placed his arms at the sides of his neck and instructed him to stop resisting, repeating, "Stop, stop, stop, stop." Sgt. Jarrell testified that even though his arms were around the side of Mr. Hester's neck, he did not perform any lateral carotid restraint even though Mr. Hester did not comply with his command. According to Sgt. Jarrell,

> where things get much more dangerous, he's [referring to Mr. Hester] a very, very strong man. He's extremely strong. From this position . . . [h]e just leans forward. . . . So my feet, my heels start to come up off the round.
>
> It's not super pronounced in this video, but when I'm holding him . . . just telling him to stop, there's no choking. There's no constriction of any airway, nothing. He starts to lean forward, and I think, "I'm going to get flipped right over his back. I'm going to land on my head on the concrete."
>
> So at that point is when I used a carotid restraint.

Finally, the security video clearly shows the two men conversing from a few feet apart before Sgt. Jarrell moves closer to Mr. Hester. Mr. Hester makes little, if any, movement, threatening or otherwise, toward Sgt. Jarrell before the officer moves behind Mr. Hester and applies a lateral carotid restraint, causing him to lose consciousness. The entire encounter – from Sgt. Jarrell's arrival at the hotel to his use of a lateral carotid restraint on Mr. Hester – occurs within a time frame of less than sixty seconds.

The Commission made factual findings regarding the security video based not on what the tape clearly shows but rather on an unconvincing effort to "interpret" these recorded events in order to make them more consistent with Sgt. Jarrell's testimony. In so doing, the Commission found that it

observe[d] from the security video from the Comfort Inn, which was admitted into evidence, Sgt. Jarrell arrive[s] and find[s] Mr. Hester remaining outside of the motel. Sgt. Jarrell engaged him in nearly one-half minute [thirty seconds] of dialogue, at which Mr. Hester crosses his arms in the apparent defiance as conceded in his testimony.

9. At 2 minutes 31 seconds into the video, Sgt. Jarrell first reaches to touch Mr. Hester's arm, having repeatedly told him to place his hands behind his back. (Hester testimony . . . ; Sgt. Jarrell, Tr. P. 250).

10. During the next 3-4 seconds, Sgt. Jarrell testified that, having seen Mr. Hester "pumping his fist" is thereby alerted under the circumstances of the danger of being punched. Sgt. Jarrell was aware that he perceived Mr. Hester was very strong, which is supported by Resp. Exhibit 9, *Nitro Police Department Arrest Report of Jared Devone Hester*, which lists him as 6ft-4in. tall, weighing 235 pounds at 29 years of age.

11. However, Mr. Hester pulled away and turned his back to him, whereupon Sgt. Jarrell placed his arms at the sides of his neck and instructed him to stop resisting, repeating "Stop, stop, stop, stop" as he felt Hester began to lean forward, positioning Jarrell to be thrown over Hester's back. (Tr. 251-252).

12. Because Mr. Hester did not cease the resistance, Sgt. Jarrell increased the pressure so as to engage the lateral vascular restraint, which was successful in rendering Hester momentarily unconscious, during which time he was lowered slowly to a seated position without injury. . . . It is only at that point that Sgt. Jarrell was able to place handcuffs on Mr. Hester and gain control of him.

(Footnote omitted).

The Commission then found that Mr. Hester's "conduct clearly placed upon Sgt. Jarrell the right to arrest him[;]" that Mr. Hester "verbally and physically resisted arrest, passively and actively[;]" that "Sgt. Jarrell announced to Mr. Hester that he was under arrest and proceeded to attempt to handcuff him, a larger man of superior size and perceived strength[;]" that "Sgt. Jarrell reasonably perceived the threat of receiving serious injuries if Hester were not brought quickly under control and used a lateral vascular restraint to do so, an approved measure that he was more than adequately qualified to safely perform[;]" and that "[t]he lateral vascular restraint was within the use of force continuum of the department and reasonable as applied to those circumstances." Based on the foregoing, the Commission found that the respondent had failed to meet its burden of showing just cause for Sgt. Jarrell's termination and ordered that he be reinstated with full pay and that he be advanced to the rank of lieutenant. The respondent appealed the decision to the circuit court.

As previously mentioned, in its review of the Commission's decision, the circuit court properly examined the evidence in the case in order in order to ascertain whether the findings of fact made by the Commission were supported by the evidence or "clearly wrong." *See Dingess*, 161 W. Va. at 377, 242 S.E.2d at 474, Syl. Pt. 1. The circuit court found that Sgt. Jarrell's argument that the use of a lateral carotid restraint was appropriate because Mr. Hester "'offered resistance'" and "admitted during his testimony

at the hearing below that he was engaged in a physical altercation" with the officer to be a "severe mischaracterization of Mr. Hester's testimony." Instead, the circuit court, after reviewing the security video, found that Mr. Hester's "only resistance, if any, was in the form of failing to put his hands behind his back within a few seconds of being ordered to do so by . . . [Sgt.] Jarrell." Further, the circuit court found that Mr. Hester "repeatedly testified that he did not resist" Sgt. Jarrell during the arrest. The circuit court found that Mr. Hester testified that he only engaged in a "'physical altercation'" with the officer when Sgt. Jarrell applied the lateral carotid restraint. "Mr. Hester precisely stated that he did not resist" Sgt. Jarrell.

The circuit court also found:

> Here, Mr. Hester was ultimately charged with public intoxication, which is not a severe crime. He showed no indication that he was a threat to officers, himself, or others; the *Arrest Report* notes he was unarmed. Respondent Jarrell's argument that Hester admitted he resisted is entirely unfounded, and the record demonstrates that Hester was passively resisting at most; if at all. The need for force was low and the amount of force used, a choke hold, was relatively high, as it caused Hester to lose consciousness, despite him being relatively unscathed afterward. Respondent Jarrell did not make many efforts to limit the amount of force used, as the entire interaction at the hotel took place in roughly one minute and escalated from a conversation to a choke hold in that time. The "security problem at issue" was low, as Hester had not performed any violent or threatening actions, and his alleged crime was public intoxication. Finally, the threat perceived by the officer could not have been high enough to justify the choke hold, as Hester had done nothing to come into or threaten physical contact with either an officer or bystander and was being charged with a non-violent crime.

9

Finally, the circuit court found:

Respondent Jarrell was trained fewer than two weeks before this arrest, it is clear that Jarrell used more force than necessary in response to anything he could have perceived. . . . Here, the evidence relied upon by the Commission was that Jarrell saw Mr. Hester "pumping his fist," observed Mr. Hester to be "very strong," and finally that Mr. Hester "pulled away and turned his back to [Jarrell]" at which point Jarrell "felt Hester [begin] to lean forward, positioning Jarrell to be thrown over Hester's back." *While the video contradicts much of Jarrell's characterization of the arrest, even if his statements are accepted as true, Jarrell's act of placing Mr. Hester in a choke hold and causing him to lose consciousness is excessive in light of what Jarrell perceived.* The Commission's *Decision Order* states that "Mr. Hester clearly at first at a minimum passively resisted arrest as confirmed by his own testimony. His resistance then clearly became active, and was cautioned to 'Stop resisting.'" While this Court agrees that Mr. Hester failing to place his hands behind his back would constitute passive resistance, the Court cannot find any evidence of Hester actively resisting, and the Commission offers no such evidence despite its finding that "[h]is resistance then clearly became active."

Instead, the video clearly shows the two men speaking to one another for roughly 30 seconds before Jarrell moves toward Hester. They speak for another few seconds before Jarrell places his hands on Hester. *Hester does not move much, if at all, for a few more seconds before Jarrell places Hester in a choke hold until Hester's body goes limp. Mr. Hester is standing up straight while being choked, never leaning forward or showing any sign of either positioning himself to toss Respondent Jarrell or any other method of resistance.* Simply put, the Court **FINDS** that Respondent Jarrell's use of a choke hold upon Mr. Hester was excessive in light of the circumstances. Even if the Court accepts as true Jarrell's characterization of the events, it is clear that Mr. Hester's actions did not constitute a situation in which a choke hold would be proper. Respondent Jarrell had been recently trained to limit his use of choke holds to more serious situations wherein the suspect exhibits aggressive, physical behavior.

Mr. Hester did not do so, and yet Jarrell responded with an incapacitating use of force.

(Some emphasis added and footnote omitted).

Based upon the all the factual discrepancies set forth by the circuit court that existed between Sgt. Jarrell's testimony, Mr. Hester's testimony, and the security video, the circuit court determined

> that the Nitro Police Department Civil Service Commission committed clear error in its role as factfinder by making findings of fact that were clearly wrong and largely contradictory to both the testimony during the hearing below and the evidence presented in the record. Likewise, the Court **FINDS** that the Commission's conclusions of law were clearly wrong in light of the incorrect findings of fact and the application of those facts to the law.

Contrary to the majority's opinion, this determination made by the circuit court was neither a reassessment of the Commission's credibility determinations regarding the witnesses who testified nor a substitution of the Commission's judgment by the circuit court. Instead, the circuit court's decision was based upon its determination that factual findings made by the Commission were "clearly wrong," because the findings were in clear contradiction of the evidence submitted. *See Dingess*, 161 W. Va. 377, 242 S.E.2d 473.

11

The evidence in this case unequivocally supports the circuit court's decision. The events surrounding Sgt. Jarrell's arrest of Mr. Hester for public intoxication show, at best, only passive resistance which does not warrant any use of force. The facts are so clear in this case that there is no need to engage in any further analysis regarding the degree of force used by Sgt. Jarrell because no force was warranted. The circuit court found that the Nitro Police Department's "Use of Force Policy" in effect at the time of Mr. Hester's arrest, prohibited "[a]ny use of force not reasonably necessary in light of the circumstances confronting the officer." Because the record is devoid of any evidence that Mr. Hester was a threat to Sgt. Jarrell, himself, or others, which might have warranted a use of force, Sgt. Jarrell's conduct under the circumstances of this case, which undeniably violated the Nitro Police Department's policy, warranted termination.

Based upon the foregoing, I respectfully dissent.